1 | Christopher B. Dolan (#165358)
  | Aimee E. Kirby (#216909)
2 | **THE DOLAN LAW FIRM**
  | 1438 Market Street
3 | San Francisco, California 94102
  | Telephone:   (415) 421-2800
4 | Facsimile:   (415) 421-2830

5 | Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT OF CALIFORNIA

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATASHA WINKFIELD, as an Individual, and as Guardian Ad Litem and mother of Jahi McMath,<br><br>Plaintiff,<br><br>v.<br><br>CHILDREN'S HOSPITAL & RESEARCH CENTER AT OAKLAND; DR. DAVID DURAND, and Does 1-100, Inclusive,<br><br>Defendants. | *Case No.: 4:13-cv-05993-SBA*<br><br>**Plaintiff's Motion to Compel Further Life Support and the installation of the a tracheostomy tube and gastric feeding tube to allow transportation of Jahi McMath; Memorandum of Points and Authorities in Support Thereof; Declaration of Aimee E. Kirby in Support Thereof; and Proposed Order**<br><br>Hearing Date: 1/7/2014<br>Time: 1:00 pm<br>Location: Dept. #1, fourth floor, 1301 Clay Street, Oakland Ca. 94612<br>Judge: Hon. Saundra Brown Armstrong |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD IN THIS ACTION,

Plaintiff files the following Motion to allow for the installation of tracheostomy tube and gastric tube:

///

///

## NOTICE OF MOTION

On the date and time above, or as soon thereafter as may the Court may hear, Plaintiff will and hereby does move the Court for an Order Compeling Further Life Support and the installation of the a tracheostomy tube and gastric feeding tube to allow transportation of Jahi McMath.

This Motion will be based upon this Notice, a Memorandum of Points and Authorities, Declaration of Aimee E. Kirby, and any attachments thereto, the papers and records on file in this action, and upon such other written and oral evidence as may be presented at the hearing of this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

On December 9, 2013, Jahi McMath went in for a routine procedure to have her tonsils removed in hopes that it would assist with her sleep apnea. Jahi is 13 years old, and is in the 8th grade. On December 12, 2013 the Defendants declared Jahi brain dead after her tonsil surgery ended with her bleeding profusely, going into cardiac arrest, and needing life-support. Currently, Jahi McMath remains on life-support at Defendant's Hospital. (See, The Declaration of Aimee E. Kirby (hereinafter "Kirby Decl.").)

Initially, a TRO was obtained in the Superior Court of the State of California for the County of Alameda pending a hearing on a finding of "brain death" pursuant to *California Health and Safety Code* 7180 & 7181. On December 24, 2013, the Hon. Evelio Grillo, in and for the Superior Court for the County of Alameda, found that Jahi McMath was brain dead pursuant to *California Health and Safety Code* Section 7080 & 7081 and extended a temporary restraining order requiring that the Defendant continue to

provide ventilator support and maintain the status quo of medical treatment through December 30, 2012.

On or about December 24, 2013 Plaintiff began taking steps to attempt to move Jahi. Plaintiff's Counsel informed Defendant that the family was undertaking efforts to locate an alternate placement for Jahi so that she can be removed from the facility. During this time period, because of the holidays, arranging transportation and acceptance of Jahi was complicated. Plaintiff asked that the Defendant maintain life support until plans were finalized. The Defendants refused to do so and indicated an intent to withdraw said support at the expiration of the State issued TRO at 5:00 on Monday December 30, 2013. Thereafter, Plaintiff did the following: (1) filed a Federal Compliant and an Ex Parte Application for a Temporary Restraining Order, (2) filed an Emergency Writ for Intervention by the Appellate Court, and (3) filed an Ex Parte Application for Reconsideration with the State Court based on the Declaration of Dr. Burke that Jahi was not brain dead. The Federal Court denied the request, but the Appellate Court granted and Emergency Stay and the State Court extended the TRO and requested further briefing. The Appellate Court thereafter refused to intervene, and the State Court, although extending the TRO, refused to grant the request for the procedures to allow transport.

At this point, Jahi has had not nutrition for nearly three (3) weeks. She is in desperate need of the installation of a tracheostomy tube and gastric tube. The Defendant has responded based on the Court's Order that they will not allow such a procedure to be done and will not write discharge instructions that instruct a physician to carry out such orders. This complicates matters as Plaintiff has a Declaration from physician Dr. Byrne testifying under oath that he does not believe that Jahi is dead. This expert has been

3
PLAINTIFF'S MOTION TO COMPEL

accepted by other courts as an expert on this very same subject. Further, because Jahi will die soon without nutrition that has been withheld from her, to maintain the status quo, i.e. her existence, the procedures must be done.

## II. LEGAL DISCUSSION

### A. Is Health and Safety Code Section 7180 Constitutional, in that it defines life by the lack of total brain activity, while other Health and Safety Code sections find no life when a heartbeat and brain activity do exist.

In the 1992 case of *Planned Parenthood vs. Casey*, 505 U.S. 833 (1992), the Supreme Court abandoned the strict trimester framework as outlined in *Roe vs. Wade*. In that case they adopted the standard of undue burden for evaluating state abortion restriction, but reemphasized the right to an abortion is rounded in the general sense of liberty and privacy protected by the Constitution. The constitutional protection of a women's decision to terminate her pregnancy derives from the Due Process Clause and the Fourteenth Amendments which declares that no state shall "deprive any person of life, liberty or property without due process." The current judicial interpretation of the U.S Constitution regarding abortion in the United States, following the Supreme Court of the United States' 1973 decision in *Roe vs. Wade*, and subsequent companion decision is that abortion is legal but may be restricted by the states to varying degrees.

One aspect of the legal abortion regime now in place has been determining when we define life (and therefore when a fetus is subject to being protected by the state). In the majority opinion delivered by the court in *Roe v. Wade*, viability was defined as "potentially able to live outside the mother's womb, albeit with artificial aid. Viability is usually placed at about seven months (28 weeks) but may occur earlier, even at 24 weeks." (*Roe v. Wade* (1973) 410 U.S. 113 at 160.) When the court ruled in 1973, the

1 then-current medical technology suggested that viability could occur as early as 24
2 weeks. Advances over the past three decades have allowed fetuses that are a few weeks
3 less than 24 weeks old to survive outside the mother's womb. These scientific
4 achievements, while life-saving for premature babies, have made the determination of
5
6 being "viable" somewhat more complicated. As of 2006, the youngest child to survive a
7 premature birth in the United States was a girl born at Kapiolani Medical Center in
8 Honolulu, Hawaii at 21 weeks and 3 days gestation gestational age. Currently California
9 state law does not affix a week at which doctors are determined to find a fetus as "alive."
10
11 (See, *Planned Parenthood vs. Casey, supra.*)

12  What is interesting in this discussion is that currently, a fetus that has had a heart
13 beat from early on, and brain activity can be terminated, and is not afforded the
14 protection of state law. However, this same criteria is then used in order to terminated life
15
16 under Health and Safety Code Section 7108. Just as abortion has been re-considered over
17 the years, Plaintiff urges this Court to examine if the criteria for brain dead determination,
18 which does not measure inner brain activity, is constitutionally flawed under strict
19 scrutiny. Plaintiff believes that the very definition being used is in contradiction with
20
21 other state law and violates Jahi's right to Due Process, and privacy. (See Declaration of
22 Dr. Bryne.)

23  **B. The Patient's Bill of Rights Mandates the installation of the devices necessary for Jahi's transport.**
24
25 In this state, a clearly recognized legal right to control one's own medical treatment
26 pre-dated the Natural Death Act. A long line of cases, approved by the Supreme Court in
27 *Cobbs v. Grant* (1972) 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1. These rights have
28 been codified under the Health and Safety Code Section as detailed below.

Health and Safety Code Section 1599: states in pertinent part:

> It is the intent of the Legislature in enacting this chapter to expressly set forth fundamental human rights which all patients shall be entitled to in a skilled nursing or intermediate care facility, as defined in Section 1250, and to ensure that patients in such facilities are advised of their fundamental rights and the obligations of the facility.

Health and Safety Code Section 1599.1, further states:

> Written policies regarding the rights of patients shall be established and shall be made available to the patient, to any guardian, next of kin, sponsoring agency or representative payee, and to the public. Those policies and procedures shall ensure that each patient admitted to the facility has the following rights and is notified of the following facility obligations, in addition to those specified by regulation:
> (c) The facility shall provide food of the quality and quantity to meet the patients' needs in accordance with physicians' orders.

While there is no Federal Patient's Bill of Right the American Medical Association has come up with the following guidelines:

California Hospital Association

> *If it is determined that the patient has expressed a desire to have life sustaining measures applied under all conditions, **an order to withhold or withdraw life sustaining treatment should not be issued unless authorized by a court.***
> (a) Hospitals and medical staffs shall adopt a written policy on patients' rights.
>
> (b) A list of these patients' rights shall be posted in both Spanish and English in appropriate places within the hospital so that such rights may be read by patients. This list shall include but not be limited to the patients' rights to:
>
> (1) Exercise these rights without regard to sex, economic status, educational background, race, color, religion, ancestry, national origin, sexual orientation, disability, medical condition, marital status, registered domestic partner status, or the source of payment for care.
>
> (2) Considerate and respectful care.

(3) Knowledge of the name of the licensed healthcare practitioner acting within the scope of his or her professional licensure who has primary responsibility for coordinating the care, and the names and professional relationships of physicians and nonphysicians who will see the patient.

(4) Receive information about the illness, the course of treatment and prospects for recovery in terms that the patient can understand.

(5) Receive as much information about any proposed treatment or procedure as the patient may need in order to give informed consent or to refuse this course of treatment. Except in emergencies, this information shall include a description of the procedure or treatment, the medically significant risks involved in this treatment, alternate courses of treatment or nontreatment and the risks involved in each and to know the name of the person who will carry out the procedure or treatment.

(6) Participate actively in decisions regarding medical care. To the extent permitted by law, this includes the right to refuse treatment.

(7) Full consideration of privacy concerning the medical care program. Case discussion, consultation, examination and treatment are confidential and should be conducted discreetly. The patient has the right to be advised as to the reason for the presence of any individual.

(8) Confidential treatment of all communications and records pertaining to the care and the stay in the hospital. Written permission shall be obtained before the medical records can be made available to anyone not directly concerned with the care.

(9) Reasonable responses to any reasonable requests made for service.

(10) Leave the hospital even against the advice of members of the medical staff.

(11) Reasonable continuity of care and to know in advance the time and location of appointments as well as the identity of persons providing the care.

(12) Be advised if the hospital/licensed healthcare practitioner acting within the scope of his or her professional licensure proposes to engage in or perform human experimentation affecting care or treatment. The patient has the right to refuse to participate in such research projects.

THE DOLAN LAW FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
438 MARKET STREET
SAN FRANCISCO, CA 94105
TEL: (415) 421-2800
FAX: (415) 421-2830

(13) Be informed of continuing health care requirements following discharge from the hospital.

(14) Examine and receive an explanation of the bill regardless of source of payment.

(15) Know which hospital rules and policies apply to the patient's conduct while a patient.

(16) Have all patients' rights apply to the person who may have legal responsibility to make decisions regarding medical care on behalf of the patient.

(17) Designate visitors of his/her choosing, if the patient has decision-making capacity, whether or not the visitor is related by blood, marriage, or registered domestic partner status, unless:

(A) No visitors are allowed.

(B) The facility reasonably determines that the presence of a particular visitor would endanger the health or safety of a patient, a member of the health facility staff, or other visitor to the health facility, or would significantly disrupt the operations of the facility.

(C) The patient has indicated to the health facility staff that the patient no longer wants this person to visit.

(18) Have the patient's wishes considered for purposes of determining who may visit if the patient lacks decision-making capacity and to have the method of that consideration disclosed in the hospital policy on visitation. At a minimum, the hospital shall include any person living in the household.

(19) This section may not be construed to prohibit a health facility from otherwise establishing reasonable restrictions upon visitation, including restrictions upon the hours of visitation and number of visitors.

However, when necessary, the courts may be approached to resolve legal disputes, such as when a physician believes that the surrogate decision-maker is not

acting in the patient's best interests or if the physician cannot choose among available surrogate decision makers with similarly close relationships to the patient.

### C. The rights guaranteed under the Bill of Rights survive death

Even if we presume that Jahi is legally dead, and that the legislation that defines this currently does not conflict with other laws and is unconstitutional, we then must determine if the rights dictated above survive. This issue is very complicated, as some courts have touched on:

> Now, however, we are on the threshold of new terrain-the penumbra where death begins but life, in some form, continues. We have been led to it by the medical miracles which now compel us to distinguish between 'death,' as we have known it, and death in which the body lives in some fashion but the brain (or a significant part of it) does not. (*Severns v. Wilmington Medical Center, Inc.* (Del.1980) 421 A.2d 1334, 1344.) A court making the decision of whether to withhold or withdraw life-sustaining medical treatment from a dependent child should consider the following factors: (1) the child's present levels of physical, sensory, emotional and cognitive functioning; (2) the quality of life, life expectancy and prognosis for recovery with and without treatment, including the futility of continued treatment; (3) the various treatment options, and the risks, side effects, and benefits of each; (4) the nature and degree of physical pain or suffering resulting from the medical condition; (5) whether the medical treatment being provided is causing or may cause pain, suffering, or serious complications; (6) the pain or suffering to the child if the medical treatment is withdrawn; (7) whether any particular treatment would be proportionate or disproportionate in terms of the benefits to be gained by the child versus the burdens caused to the child; (8) the likelihood that pain or suffering resulting from withholding or withdrawal of treatment could be avoided or minimized; (9) the degree of humiliation, dependence and loss of dignity resulting from the condition and treatment; (10) the opinions of the family, the reasons behind those opinions, and the reasons why the family either \*\*135 has no opinion or cannot agree on a course of treatment; (11) the motivations of the family in advocating a particular course of treatment; and (12) the child's preference, if it can be ascertained, for treatment. This list is not meant to be exclusive, but is intended to provide a set of factors to be considered, analyzed and weighed. Not all of these factors may be applicable in a given case. The court is not limited to consideration of only these factors, and may take other factors into account when appropriate, especially as medical science and technology develop.

In re Christopher I. 106 Cal.App.4th 533, 551-552, 131 Cal.Rptr.2d 122, 134 - 135 (Cal.App. 4 Dist., 2003)

Only one case has truly touched on the fact that these rights do still exit:

> It appears that once brain death has been determined, by medical diagnosis under Health and Safety Code section 7180 or by judicial determination, no criminal or civil liability will result from disconnecting the life-support devices (see *People v. Mitchell* (1982) 132 Cal.App.3d 389, 183 Cal.Rptr. 166). This does not mean the hospital or the doctors are given the green light to disconnect a life-support device from a brain-dead individual without consultation with the parent or guardian. Parents do not lose all control once their child is determined brain dead. We recognize the parent should have and is accorded the right to be fully informed of the child's condition and the right to participate in a decision of removing the life-support devices. This participation should pave the way and permit discontinuation of artificial means of life support in circumstances where even those most morally and emotionally committed to the preservation of life will not be offended. Whether we tie this right of consultation to an inherent parental right, the Constitution, logic, or decency, the treating hospital and physicians should allow the parents to participate in this decision. *See Dority vs. the Superior Court of San Bernarndino*, (1983) 145 Cal.App. 3d 273.

Because case law currently indicates that these rights exist past death, or at least raises the question of it, this Court should grant Plaintiff the relief to allow for Jahi's transport.

**D.   Further this court should grant the relief sought based on Plaintiff's Religious beliefs defining life.**

The courts in the following cases held that, under the circumstances, a patient was entitled, under the state patients' bill of rights, to a particular medical treatment, or course of treatment, not being provided by the patient's facility.

> Ordering the defendant hospital to provide a room for the performance of a religious circumcision, or "bris," on a newborn boy by a religiously qualified person "whose function it is to perform the ritual circumcision on male children in accordance with Hebrew religious requirements," the court in Oliner v. Lenox Hill Hospital, 106 Misc. 2d 107, 431 N.Y.S.2d 271 (Sup. Ct. 1980), held that the Orthodox Jewish father's right to have a

10
PLAINTIFF'S MOTION TO COMPEL

"bris" performed for his infant son was mandated by N.Y. Pub. Health Law § 2803–c, which, in articulating a patient's rights, declared that "every patient's civil and religious liberties ... shall not be infringed, and the facility shall encourage and assist in the fullest possible exercise of these rights."

Granting a writ of mandamus, in an action by a state magistrate, compelling the director of the state department of health to provide detoxification and alcoholism treatment programs at community mental health centers, and compelling the state Commissioner of Finance and Administration to make funds available for the provision of such services, the court in McGraw v. Hansbarger, 171 W. Va. 758, 301 S.E.2d 848 (1983), declared that the state was obligated to provide the resources necessary to accord inmates of state mental institutions the rights that the state had granted them under W. Va. Code § 27–5–9, providing in part that "[e]ach patient of a mental health facility receiving services therefrom shall receive care and treatment that is suited to his needs."

(See, Oliner v. Lenox Hill Hospital, 106 Misc. 2d 107, 431 N.Y.S.2d 271 (Sup. Ct. 1980).

Dated: January 2, 2014

By: _____

CHRISTOPHER B. DOLAN
AIMEE E. KIRBY
DOLAN LAW FIRM
Attorney for Plaintiff

Christopher B. Dolan (#165358)
Aimee E. Kirby (#216909)
**THE DOLAN LAW FIRM**
1438 Market Street
San Francisco, California 94102
Telephone: (415) 421-2800
Facsimile: (415) 421-2830

Attorneys for Plaintiff

UNITED STATES SAN FRANCISCO DISTRICT COURT OF CALIFORNIA

UNLIMITED JURISDICTION

| | |
|---|---|
| LATASHA WINKFIELD, as an Individual, and as Guardian Ad Litem and mother of Jahi McMath,<br><br>Plaintiff,<br><br>v.<br><br>CHILDREN'S HOSPITAL & RESEARCH CENTER AT OAKLAND CHILDREN'S HOSPITAL & RESEARCH CENTER AT OAKLAND; DR. DAVID DURAND, and<br>Does 1-100, Inclusive | *Case No.: 4:13-cv-05993-SBA*<br><br>**Declaration of Aimee E. Kirby in Support of Plaintiff's Motion to Compel Further Life Support and the installation of the a tracheostomy tube and gastric feeding tube to allow transportation of Jahi McMath**<br><br>Hearing Date: 1/7/2014<br>Time: 1:00 pm<br>Location: Dept. #1, fourth floor, 1301 Clay Street, Oakland Ca. 94612<br>Judge: Hon. Saundra Brown Armstrong |

I, AIMEE KIRBY, declare as follows:

1. I am counsel of record for the Plaintiff, and a member in good standing with the State of California Bar and The Federal Court for the Northern District of California. I make this declaration in support of Plaintiff's Ex Parte Application For A Temporary Restraining Order And Order To Show Cause Re: Preliminary Injunction. The facts stated herein are known to me personally and, if not known

12
PLAINTIFF'S MOTION TO COMPEL

personally, made on information and belief.

2. On December 9, 2013, Jahi McMath went in for a routine procedure to have her tonsils removed in hopes that it would assist with her sleep apnea. Jahi is 13 years old, and is in the 8th grade. On December 12, 2013 the Defendants declared Jahi brain dead after her tonsil surgery ended with her bleeding profusely, going into cardiac arrest, and needing life-support. Currently, Jahi McMath remains on life-support at Defendant's Hospital.

3. Plaintiff is actively seeking alternate placement for her child. My firm has tried to assist in that endeavor and have been informed that sub-acute facilities require that a patient have a tracheostomy tube and a gastric tube inserted prior to transfer and admission.

4. Defendant has refused to follow the directions of Plaintiff to insert such tubes so she can transfer her daughter because they "won't provide medical treatment to a dead person."

5. Absent an injunction, this 13 year old girl will be taken off life-support immediately by the Defendants. There can be no greater irreparable harm than death.

6. A balancing of the relative hardships on the parties favors granting the requested temporary restraining order. There is absolutely no damage that the Defendants can claim that would override improperly ending life-support measures on child.

7. My firm has informed the Hospital Defendants that the family is actively seeking to re-locate their daughter to an alternate care facility but, given the holidays, and the emotional difficulties accompanying this most critical and catastrophic injury,

THE DOLAN LAW FIRM
TRIAL LAWYERS
THE DOLAN BUILDING
430 MARKET STREET
SAN FRANCISCO, CA
94105
TEL: (415) 421-2800
FAX: (415) 421-2830

13
PLAINTIFF'S MOTION TO COMPEL

and the relative naiveté of the Plaintiff over medical issues, the family, despite best efforts, has been unable to locate alternate arrangements. All facilities stated that as a precondition of transfer they would require that a tracheostomy tube and gastric tube be placed into Jahi McMath.

8. On behalf of the family, as their designated legal representative, I have requested that measures be taken to allow ventilation support to continue and to support the physical health of Jahi McMath by installing a feeding tube, provide nutrition and place a more permanent measure to allow oxygen to be delivered.

I declare that the foregoing is true and correct under the penalty of perjury under the laws of the State of California. Executed on January 2, 2014, in Manhattan Beach, California.

Dated: January 2, 2014

By: _____

CHRISTOPHER B. DOLAN
AIMEE E. KIRBY
DOLAN LAW FIRM
Attorney for Plaintiff

## PROOF OF SERVICE
*McMath v. Children's Hospital & Research Center at Oakland, et al.*
*Case No.: 4:13-cv-05993-SBA*

I, Mary Barnes, declare that:

I am employed in the County of San Francisco, State of California. I am over the age of 18, and am not a party to this action. My business address is 1438 Market Street, San Francisco, California 94102.

On January 2, 2014 I served:

**Plaintiff's Motion to Compel Further Life Support and the installation of the a tracheostomy tube and gastric feeding tube to allow transportation of Jahi McMath; Memorandum of Points and Authorities in Support Thereof; Declaration of Christopher B. Dolan in Support Thereof; and Proposed Order**

in said cause addressed as follows:

| | |
|---|---|
| Douglas C. Straus<br>Brian W. Franklin<br>Noel M. Caughman<br>ARCHER NORRIS<br>A Professional Law Corporation 2033<br>North Main Street, Suife 800<br>Walnut Creek, California 94596-3759<br>Telephone: 925.930.6600<br>Facsimile: 925.930.6620<br>***Attorneys for Defendant Children's Hospital*** | Alameda Superior Court of California<br>Attn: Hon. Evelio Grillo<br>U.S. Post Office Building Address<br>201 Thirteenth Street, 2nd Floor<br>Oakland, California 94612 |

/XX/ **(BY ELECTRONIC SERVICE)** I caused the above-mentioned documents to be transmitted electronically according to **Douglas Straus at dstraus@archernorris.com, Gary A Watt at gwatt@archernorris.com, and Colin Coffey at ccoffey@archernorris.com.**

/XX/ **(BY MAIL)** By placing a true copy of the above-mentioned documents enclosed in a sealed envelope. I placed each such sealed envelope, with postage thereon fully prepaid for first-class mail, for collection and mailing at San Francisco, California, following ordinary business practices. **(Alameda Superior Court of California, to the attention to Judge Grillo only)**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on January 2, 2014, at San Francisco, California.

_____
Mary Barnes