1    Douglas C. Straus (Bar No. 96301)
     dstraus@archernorris.com
2    ARCHER NORRIS
     2033 North Main Street, Suite 800
3    Walnut Creek, CA 94596-3759
     Telephone:     925.930.6600
4    Facsimile:      925.930.6620

5    Attorneys for Defendant
     CHILDREN'S HOSPITAL & RESEARCH
6    CENTER AT OAKLAND

7

8                  UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10

11    LATASHA WINKFIELD, as an           Case No. 4:13-cv-05993-SBA
     Individual, and as Guardian Ad Litem and
12    mother of Jahi McMath,             **OPPOSITION TO PLAINTIFF'S MOTION**
                                 **TO COMPEL FURTHER LIFE SUPPORT**
13            Plaintiff,            **AND THE INSTALLATION OF A**
                                 **TRACHEOSTOMY TUBE AND GASTRIC**
14    v.                               **FEEDING TUBE TO ALLOW**
                                 **TRANSPORTATION OF JAHI MCMATH**
15    CHILDREN'S HOSPITAL & RESEARCH
     CENTER AT OAKLAND; DR. DAVID        Date:        January 7, 2014
16    DURAND, and Does 1-100, inclusive,      Time:        1:00 p.m.
                                   Place:       Dept. 1, 4th Flr,
17            Defendants.           1301 Clay St., Oakland
                                 Judge:      Hon. Saundra Brown Armstrong
18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ......................................................................................................... 1

II.   ARGUMENT ............................................................................................................... 2

    A.   Jahi McMath is Dead .......................................................................................... 2

    B.   It Would be Legally Unprecedented and Macabre to Attempt to Compel
        Surgery on a Dead Body .................................................................................... 4

    C.   Federal Courts Shall Abstain From Pending State Judicial Proceedings
        Absent Extraordinary Circumstances .................................................................. 6

    D.   Plaintiff Fails to Establish Her Right to Compel Further Life Support and
        the Installation of a Tracheostomy Tube and Gastric Feeding Tube "Clearly
        Exist." ................................................................................................................. 8

    E.   Plaintiff Provides No Authority that Jahi McMath May Assert
        Constitutional Rights After Her Death that Entitle Plaintiff to the Relief
        She Seeks ........................................................................................................... 11

    F.   Plaintiff Requests Relief That Violates Medical Ethics and State Law
        Governing Hospitals ......................................................................................... 13

III.  CONCLUSION ........................................................................................................... 15

1

# TABLE OF AUTHORITIES

2

3

**CASES**

4
5
*Board of Supervisors v. McMahon*, 219 Cal.App.3d 286, 295 (1990) (citing, *Hagen v. Beth*, 118 Cal. 330, 331 (1897)) ................................................................................................ 5

6
*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 816 n. 22, 96 S.Ct. 1236, 1246 n. 22, 47 L.Ed.2d 483 (1976) ......................................................................... 7

7
*Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 234 (3d Cir. 2008) ........................................ 12

8
*Dahl v. HEM Pharmaceuticals Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993) ................................... 5

9
*Dority v. Superior Court*, 145 Cal. App. 3d 273, 280 (Cal. App. 4th Dist. 1983) ........................ 12

10
*Fresh Int'l Corp. v. Agric. Labor Relations Bd.*, 805 F.2d 1353, 1356 (9th Cir. 1986) ................. 7

11
*Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004) ............................................................. 6

12
*Green v. City of Tucson*, 255 F.3d 1086, 1089 (9th Cir. 2001) ...................................................... 7

13
*In re Christopher*, 106 Cal.App.4th 533 (2003) ........................................................................... 11

14
*Juidice v. Vail*, 430 U.S. 327, 337 (1977) ....................................................................................... 7

15
16
*M&A Gabaee v. Community Redevelopment Agency of Los Angeles*, 419 F.3d 1036, 1039-40 (9th Cir. 2005) ............................................................................................................................... 6

17
*McGraw v. Hansbarger*, 171 W. Va. 758, 764 (W. Va. 1983) .................................................... 12

18
*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) .............. 6

19
*Oliner v. Lenox Hill Hospital*, 106 Misc. 2d 107, 108 (N.Y. Sup. Ct. 1980) ............................... 12

20
*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ....................................................................... 7

21
*San Diego Minutemen v. Cal. Bus., Transp. & Hous.*, 570 F. Supp. 2d 1229, 1255-1256 (S.D. Cal. 2008) ......................................................................................................................................... 5

22
23
*San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546 F.3d 1087, 1091 (9th Cir. 2008) .......................................................................................... 6

24
*Severns v. Wilmington Medical Center, Inc.* 421 A.2d 1334, 1347 (Del. Supreme Ct. 1980) ...... 12

25
*Superintendent of Belchertown State Sch. v. Saikewicz*, 370 N.E.2d 417, 425-426 (Mass. 1977) 13

26
*Younger v. Harris*, 401 U.S. 37, 43 (1971) .............................................................................. 6, 7

27

28

**TABLE OF AUTHORITIES**
(continued)

**Page**

**STATUTES**

California Health & Safety Code § 7180 .................................................................. 5, 7, 8

California Health & Safety Code § 1254.4(b) ............................................................... 10

iii

# I. INTRODUCTION

Children's Hospital & Research Center At Oakland ("Children's") vigorously opposes Latasha Winkfield's factually unsupported and legally meritless attempt to compel Children's to perform surgical procedures upon the body of Jahi McMath, deceased.  This request is grotesque and unprecedented.

Ms. McMath is dead.  Three neurologists have so determined.  Alameda County Superior Court Judge Evelio Grillo decreed her dead—after hearing evidence about the same kind of spinal reflex movements that Plaintiff now describes.  Paul Byrne, Plaintiff's "expert," is a patently unqualified ideologue who was brought from Ohio to California by Plaintiff after Judge Grillo commented on Dr. Byrne's biases because Dr. Byrne does not accept the concept of "brain death."  He is not opining that Jahi McMath is not brain dead; he is opining, without a competent foundation, that "brain death is not death."

No doctor has opined that Ms. McMath will recover any brain function.  She has had no blood flowing to her brain for three weeks.  There is no need, urgent or otherwise, to perform surgical procedures upon her body.

Ordering invasive surgical procedures upon a dead body goes far beyond the typical preliminary injunction designed to preserve the status quo.  Such mandatory injunctive relief is without precedent.  Moreover, the practicalities of the situation are impossible: Children's cannot perform surgery and surgeons with privileges at Children's are independent contractors who cannot be compelled by Children's to service the dead.

Plaintiff's legal claims are frivolous.  There is no evidence that California Health & Safety Code section 7180 improperly defines death.  The fact that some courts hold that a fetal life can be nurtured and grow into an independent human being is utterly irrelevant to present circumstances because Ms. McMath cannot be nurtured to recover from death.  Statutory provisions relating to living persons in skilled nursing facilities have no bearing on how hospitals deal with persons who have died.

Plaintiff is free to believe, as a matter of religious principle or otherwise, that her daughter is not dead.  However, Plaintiff has no constitutional right to insist that the United States medical-

1  legal system honor her religious belief and treat a dead person as if he or she remained alive.

2  Plaintiff's insistence that she, and presumably all other each citizens, have a constitutional right to

3  personally define "death" and mandate continuing treatment of the bodies of any person who does

4  not meet the citizen's definition of death has no foundation in jurisprudence and would pose

5  practical, ethical and legal challenges of an impossible nature.

6      There is no competent evidence before this Court that surgery is required before Ms.

7  McMath's body can be transported to any other facility.  Nor is there competent evidence that the

8  body could be transported to any facility after surgery is performed.  However, even if it were

9  true that surgery could enhance transportation of the body of Plaintiff's deceased daughter, there

10  are no legal grounds supporting an order for such surgery.

11      This effort to mandate surgery on a deceased person has already been rejected four times

12  by courts in the past few days.  The latest request should be rejected as well.

13  ## II.  ARGUMENT

14  **A.      Jahi McMath is Dead.**

15      Sadly, Jahi McMath is dead.  This is the opinion of every competent physician who has

16  examined her, beginning with Robin Shanahan, M.D. on December 11, 2013, continuing with

17  Robert Heidersbach, M.D. on December 12, 2013 and ending with Paul Fisher, M.D. on

18  December 23, 2013.  (*See*, Declaration of Douglas C. Straus, Dkt. 4, ("Straus Decl.") Exhibits 8,

19  9 and 19.)  She suffered brain death: an irreversible cessation of all functions of the entire brain,

20  including her brain stem. *Ibid*.

21      Alameda County Superior Court Judge Evelio Grillo, after conducting a multi-day

22  hearing, applying a clear and convincing evidence standard, determined that Ms. McMath is

23  deceased because she has no brain function whatsoever. (Straus Decl., Exhibit 26, pg. 16:11-13.)

24      Plaintiff offers no competent contrary evidence.  Neither the Declaration of Paul Byrne

25  nor evidence of spastic body movements refutes the fact of brain death.  Dr. Byrne, neither a

26  licensed California physician nor a neurologist, is hardly an unbiased observer here.  On

27  December 24, 2013, before he ever observed Ms. McMath's body, authored an article entitled

28  "Jahi Is Not Truly Dead," December 24, 2013, renewamerica.com.  In that article, Dr. Byrne

2

1    concluded "And for Jahi, they just want to kill her, yes change the living Jahi into a cadaver."

2    His declaration--not properly attested to under California or federal law, replete with hearsay and

3    utterly lacking in foundation--offers no credible evidence that Jahi McMath is anything other than

4    dead.

5         The claim that Jahi McMath's body is alive because it occasionally moves is also

6    inaccurate.  The existence of these movements was known to Judge Grillo when he correctly

7    concluded Ms. McMath was dead.  Dr. Shanahan testified in Superior Court that she observed

8    "dramatic" spontaneous movements of Ms. McMath's body on December 12, 2013 (*See,*

9    Reporter's Transcript of Proceeding 12/24/13, Dkt. 14, 68:8, 72:8-18, 82:6-16, filed under seal

10   concurrently herewith) and that these movements were "spinal reflex movements."  (*Ibid,* 68:13-

11   15, 86:12-25.)  Dr. Shanahan took these movements of Ms. McMath's body into account in

12   concluding that Jahi McMath was dead because there had been a complete cessation of brain

13   activity.  Stanford neurologist Paul Fisher confirmed that opinion on December 23, 2014 when he

14   opined that Ms. McMath's brain had received no blood for at least the previous 11 days.

15        As indicated by Dr. Heidi Flori, the Medical Director of the Pediatric Intensive Care unit

16   at Children's, such movements are consistent with "brain death-associated reflexes" and

17   "automatisms" (automatic behavior) and do not signal that Ms. McMath is alive.  Such

18   movements in brain dead bodies is frequently reported in medical literature and includes

19   undulating (wave like) toe movements, unusual facial movements,  abnormal body posturing,

20   respiratory-like movements, hugging-like motion, eyelid opening, head turning, limb elevation

21   with neck flexion and other spinal reflexes. (See Declaration of Heidi Flori, M.D, filed herewith

22   at ¶¶3-6.)  It is understood that such movements generate from the spinal cord and not the brain,

23   as the brain has ceased to function.  The American Academy of Neurology has repeatedly

24   discussed this phenomenon when discussing the criteria for brain death and indicated that such

25   movements do not indicate that the individual is alive. (See also the Declaration of Sidney M.

26   Gospe, Jr. M.D, filed herewith.)   Dr. Gospe, who is board certified in General Pediatrics and

27   Child Neurology, is the Head of the Division of Pediatric Neurology at the University of

28   Washington and has been in practice for 25 years. He describes that movements as described by

OPP. TO MOTION TO COMPEL FURTHER LIFE
SUPPORT
CASE NO. 4:13-CV-05993-SBA

1   Plaintiff and Dr. Byrne may be present despite brain death. (Gospe Declaration at ¶¶5-6.) They do

2   not indicate that the patient is alive. Once a patient has been clinically determined to be brain

3   dead, he or she will never regain brain function (Gospe Declaration at ¶6.)  Furthermore, the

4   alleged "breathing" observed by Plaintiff, is also not a sign that Ms. McMath is alive, but instead,

5   is merely a reflection of excessive humidity or deposit accumulation in ventilator tubing or

6   ventilator filters that need to be exchanged. The American Academy of Neurology has also

7   commented on this ventilator phenomenon potentially falsely suggesting to a layman that the

8   patient is "breathing" and therefore not brain dead. (Flori Declaration at ¶7.)

9        The movements Dr. Byrne claims to have observed are spinal reflex movements.  He does

10   not contend otherwise.  Dr. Byrne does not explain why these movements are indicative of brain

11   activity as defined by Health & Safety Code section 7180.  As Judge Grillo commented, "Dr.

12   Byrne might not qualify as an expert based on his religious and philosophical approach to the

13   definition of death and the possibility that he would not be able to apply accepted medical

14   standards."  (Straus Decl., Exhibit 26, p.14.)

15        Ms. Winkfield was well aware that Dr. Byrne was already viewed with skepticism by

16   Judge Grillo when she imported him to California to view Ms. McMath's body and provide his

17   ideologically-motivated declaration. Why wasn't a California physician utilized?  Why wasn't a

18   neurologist retained?  The answer is obvious: any competent, unbiased medical professional who

19   examines the body of Jahi McMath will reach the same conclusion as Judge Grillo: this young

20   lady is deceased.

21        Jahi McMath has been dead for nearly three weeks.  There is no urgent need to perform

22   any surgical procedures upon her.

23   **B.    It Would be Legally Unprecedented and Macabre to Attempt to Compel Surgery on
          a Dead Body.**

24        Ms. Winkfield seeks an order compelling Children's Hospital to perform multiple surgical

25   procedures on Jahi McMath's body without citing a single legal authority supporting this request.

26   There is an existing restraining order that preserves the status quo—ordering Children's to

27   preserve the body even though Jahi McMath's death has been judicially confirmed.  Children's

28

OPP. TO MOTION TO COMPEL FURTHER LIFE
SUPPORT
CASE NO. 4:13-CV-05993-SBA

1   has opposed that restraining order but has fully complied with its terms.

2       Ms. Winkfield now, for at least the fifth time, asks a court to require a hospital to perform

3   surgery on a dead person.  Ms. Winkfield failed at her attempt to establish in the trial court that

4   she is entitled to preliminary injunctive relief because she could not show a reasonable probability

5   of prevailing on the merits of her claim that, diagnosis of death notwithstanding, it is the parents

6   of the deceased that have an enduring right to decide when further medical procedures are

7   warranted, despite the conclusion by trained medical professional that such surgical procedures

8   are inappropriate.  There is no legal support for such a contention, and Plaintiff cannot establish

9   that she is entitled to such relief.

10      The burden on a party seeking mandatory injunctive relief, *i.e.,* a change in conditions, is

11  even higher that the burden Ms. Winkfield failed to meet in her previous request for injunction

12  relief.  A mandatory injunction is subject to a heightened scrutiny and should not be issued unless

13  the facts and the law clearly favor the moving party.  *San Diego Minutemen v. Cal. Bus., Transp.*

14  *& Hous.*, 570 F. Supp. 2d 1229, 1255-1256 (S.D. Cal. 2008); *Dahl v. HEM Pharmaceuticals*

15  *Corp.*, 7 F.3d 1399, 1403 (9th Cir. 1993).  The granting of such a mandatory injunction pending

16  the trial before the rights of the parties have been definitely ascertained, is not permitted except in

17  extreme cases where the right thereto is clearly established and it appears that irreparable injury

18  will flow from its refusal. *Board of Supervisors v. McMahon*, 219 Cal.App.3d 286, 295 (1990)

19  (citing, *Hagen v. Beth*, 118 Cal. 330, 331 (1897)).

20      Ms. Winkfield cannot demonstrate that her "right" to compel Children's Hospital to

21  perform surgery on Jahi McMath's body is "clearly established."  A state trial court has

22  determined after an evidentiary hearing that Jahi McMath is legally deceased under California

23  Health & Safety Code § 7180,  California's version of the Uniform Determination of Death Act.

24  The state court made that determination in rejecting Ms. Winkfield's petition to require

25  Children's Hospital to perform medical procedures on Jahi McMath's body as if Jahi McMath

26  were not deceased.  Ms. Winkfield has sought review of the state trial court orders in the

27  California Court of Appeal, which has not issued a ruling.  Ms. Winkfield has also sought

28  injunctive relief from the California Court of Appeal (the same relief that Ms. Winkfield seeks

OPP. TO MOTION TO COMPEL FURTHER LIFE
SUPPORT
CASE NO. 4:13-CV-05993-SBA

from this federal court), which denied the request without prejudice to Ms. Winkfield seeking such relief from the state trial court, which promptly scheduled a Case Management Conference for Friday, January 3, 2103.

Ms. Winkfield now seeks to invoke the jurisdiction of this Court and ask the federal government to intervene, enter a declaratory judgment that the definition of death in the Uniform Determination of Death Act is unconstitutional, and to issue a mandatory injunction that the state court has denied several times.

## C.     Federal Courts Shall Abstain From Pending State Judicial Proceedings Absent Extraordinary Circumstances.

A threshold question is whether this federal court can or should exercise jurisdiction over Plaintiff's claims.  Since "the beginning of this country's history Congress has, subject to few exceptions, manifested a desire to permit state courts to try state cases free from interference by federal courts." *M&A Gabaee v. Community Redevelopment Agency of Los Angeles*, 419 F.3d 1036, 1039-40 (9th Cir. 2005) (quoting *Younger v. Harris*, 401 U.S. 37, 43 (1971)). The *Younger* doctrine espouses "a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances." *Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982). The jurisprudential basis for Younger abstention is "rooted in overlapping principles of equity, comity and federalism." *San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose*, 546 F.3d 1087, 1091 (9th Cir. 2008). A federal court must abstain under *Younger* if four requirements are met:

> (1) a state-initiated proceeding is ongoing; (2) the proceeding implicates important state interests; (3) the federal plaintiff is not barred from litigating federal constitutional issues in the state proceeding; and (4) the federal court action would enjoin the proceeding or have the practical effect of doing so, i.e., would interfere with the state proceeding in a way that *Younger* disapproves.

*Id*. at 1092 (citing *Gilbertson v. Albright*, 381 F.3d 965, 978 (9th Cir. 2004)).  These factors are present here:

> (1)     the state proceedings were initiated by Ms. Winkfield well before she filed her

1    complaint in this Court, and proceedings are ongoing in both the state trial court and Court of

2    Appeal;

3         (2)    the proceedings involve important state interests:  California has an interest in

4    defining death consistent with other states under the Uniform Declaration of Death Act.  See

5    California Health & Safety Code §§ 7180-7184.5.   Similarly, California has an interest in

6    regulating whether family members may override the professional judgments of licensed

7    physicians and compel scarce health care resources to be expended on patients who are legally

8    dead, rather than on the living;

9         (3)    Ms. Winkfield is not barred from raising her federal constitutional issues in the

10   state proceedings. See *Green v. City of Tucson*, 255 F.3d 1086, 1089 (9th Cir. 2001) (en banc)

11   ("Each system [i.e. state and federal] is competent to decide federal constitutional issues, and

12   each is entrusted with doing so in appropriate cases."); see also *Pennzoil Co. v. Texaco, Inc*., 481

13   U.S. 1, 15 (1987) "[W]hen a litigant has not attempted to present his federal claims in related

14   state-court proceedings, a federal court should assume that state procedures will afford an

15   adequate remedy, in the absence of unambiguous authority to the contrary.");

16        (4)    The relief sought by Ms. Winkfield in this Court would have the practical effect of

17   interfering with the state proceedings by contradicting the state trial court's determination that

18   Jahi McMath is legally deceased under California Health & Safety Code § 7180, and

19   contradicting the state court's determination that further medical intervention is not warranted.

20   The state court would be unable to enforce the orders already issued without violating the

21   judgment sought by Ms. Winkfield in this Court.

22        "When a case falls within the proscription of Younger, a district court must dismiss the

23   federal action." *Fresh Int'l Corp. v. Agric. Labor Relations Bd*., 805 F.2d 1353, 1356 (9th Cir.

24   1986) (citing *Juidice v. Vail*, 430 U.S. 327, 337 (1977)). The Supreme Court has stated expressly

25   that "[w]here a case is properly within [the *Younger*] category of cases, there is no discretion to

26   grant injunctive relief." *Colorado River Water Conservation District v. United States*, 424 U.S.

27   800, 816 n. 22, 96 S.Ct. 1236, 1246 n. 22, 47 L.Ed.2d 483 (1976).

28

                                                        7

**D.** **Plaintiff Fails to Establish Her Right to Compel Further Life Support and the Installation of a Tracheostomy Tube and Gastric Feeding Tube "Clearly Exist."**

Even if this federal court may exercise jurisdiction over Plaintiff's claims, Plaintiff's motion to compel further procedures should be denied on the merits. Frankly, the burden on Ms. Winkfield here is unfathomably heavy as she asks this Court to compel a hospital to perform surgery on her daughter's dead body. Ms. Winkfield offers no authority that suggests her right to compel surgery upon her daughter's deceased body is "clearly established" or "clearly favored." In fact, Plaintiff only asserts that the case law "indicates" rights exist, "or at least raises the question of it." (Plaintiff's Motion to Compel, 10:16-18.) Plaintiff does not even attempt to meet the substantial burden required to invoke a mandatory injunction to compel Children's Hospital to perform surgeries on Jahi McMath's dead body.

Plaintiff does not establish any statutory right under which she may compel Children's Hospital to install medical devices to facilitate transfer of Jahi McMath's body to another facility. Health & Safety Code section 15999, *et seq*. is completely irrelevant, as that statute governs the rights of living patients, not dead persons such as Jahi McMath. The Health & Safety Code contains a statutory scheme to govern a hospital's procedures following the determination of death of one its patients: including sections 7180, 7181 and 1254.4. Taken together, these statutes demonstrate Ms. Winkfield does not possess any statutory right to compel Children's Hospital to perform further surgical procedures after Jahi McMath has been determined to be dead.

Health & Safety Code section 7180 provides that "[a]n individual who has sustained . . . irreversible cessation of all functions of the entire brain, including the brain stem, is dead." That section also states that "[a] determination of death must be made in accordance with accepted medical standards. *Ibid*. Health & Safety Code section 7181 requires "independent confirmation by another physician" when a determination of brain death has been made. Notably, section 7181 does not require confirmation by an independent physician (i.e., a physician who is not affiliated with the hospital where the original diagnosis of death was made). Rather, as its language plainly states, section 7181 requires only an "independent confirmation by another physician."

Children's Hospital followed this statutory requirement before Ms. Winkfield went to

OPP. TO MOTION TO COMPEL FURTHER LIFE SUPPORT
CASE NO. 4:13-CV-05993-SBA

1   court.  On December 11, 2013, Dr. Robin Shanahan made a determination that Ms. McMath had

2   suffered "irreversible cessation of all functions of her entire brain, including her brain stem."

3   (See, Straus Decl., Exh. 9, p. 2, lines 12-14)  The very next day, "another physician"—Dr. Robert

4   Heidersbach—"independently confirmed" through his own examination that Ms. McMath had

5   suffered "an irreversible cessation of all the functions of the entire brain, including her brain stem

6   and had no respiratory brain stem function."  (Straus Decl., Exh. 8, p. 2, lines 18-20).

7       Nonetheless, the Superior Court appointed Dr. Paul Fisher to conduct his own

8   independent examination of Ms. McMath pursuant to sections 7180 and 7181.  (Straus Decl.,

9   Exh. 16 ¶ 1 [erroneously referring to sections "7800 and 7801"]; see also Exh. 26, p. 5:16-18

10  [explaining that Dr. Fisher was appointed as "the independent 7181 physician"]).  That same day,

11  Dr. Fisher performed an independent examination of Ms. McMath for the purpose of determining

12  whether, under the applicable medical standards, she was brain dead.  His conclusion that Ms.

13  McMath is brain dead was unequivocal.  (Straus Decl., Exh. 19).

14      On December 24, 2013, the Superior Court conducted a hearing that included the

15  testimony (and cross-examination by Winkfield's counsel) of Dr. Fisher and Dr. Shanahan, after

16  which it concluded that Jahi McMath is dead.  Given that the state court provided due process in

17  the form of a contested hearing with procedural safeguards such as testimony under oath and

18  cross-examination and a requirement of proof by clear and convincing evidence, this court should

19  reject any argument by Ms. Winkfield that procedural due process was denied.

20      Health & Safety Code section 1254.4, enacted in 2008, strikes the appropriate balance

21  between a family's need for "a reasonably brief period" of time to handle the shock of death and

22  the right of the hospital to terminate a ventilator at a time it deems appropriate.  Section 1254.4(a)

23  states that "A general acute care hospital shall adopt a policy for providing family or next of kin

24  with a reasonably brief period of accommodation . . . from the time that a patient is declared dead

25  by reason of irreversible cessation of all functions of the entire brain, including the brain stem, in

26  accordance with Section 7180, through discontinuation of cardiopulmonary support of the

27  patient."  Subdivision (b) defines a reasonably brief period very specifically and narrowly:  "a

28  'reasonably brief period' means an amount of time afforded to *gather family or next of kin at the*

9

OPP. TO MOTION TO COMPEL FURTHER LIFE
SUPPORT
CASE NO. 4:13-CV-05993-SBA

1   *patient's bedside*." Health & Safety Code § 1254.4(b) (emphasis added).  And during this

2   "reasonably brief period of accommodation," a hospital is required to continue "only previously

3   ordered cardiopulmonary support." Health & Safety Code §1254.4(a) (emphasis added).  "No

4   other medical intervention is required." *Ibid*.

5           This statutory scheme makes it clear that it is the hospital—not the decedent's family or

6   next of kin—that retains the right to discontinue cardiopulmonary support and refrain from

7   providing further medical treatment.  As to when such treatment is terminated, the statute

8   provides that the hospital's exercise of its professional discretion is subject only to providing a

9   "reasonably brief period" for family and next of kin to gather to be with the deceased patient at

10  bedside.

11          *A fortiori*, section 1254.4 does not require an indefinite period for purposes other than

12  gathering at bedside, such as maintaining a ventilator until a parent decides to terminate support

13  or completes a search for an alternative facility willing to receive the now-deceased patient and

14  continue ventilation indefinitely.  Nor does the statute vest the final decision in the parents.  The

15  plain language of the statute also makes another thing abundantly clear: no hospital is required to

16  provide any medical intervention beyond the preexisting cardiopulmonary support.  Thus, despite

17  Ms. Winkfield's plan to move Ms. McMath to another facility, any procedures that might be

18  needed to prepare a deceased patient for transport to a different hospital are also not required of

19  Children's Hospital.

20          Here, Children's Hospital provided Ms. Winkfield and the other family/next of kin with

21  well in excess of the statutorily required period of accommodation.  Plaintiff has not contended

22  otherwise.  Health & Safety Code sections 7180, 7181 and 1254.4 establish that Ms. Winkfield

23  does not possess any statutory right to compel Children's Hospital to perform further medical

24  intervention.  As with the determination of death, Children's Hospital has at all times complied

25  with the statutory requirements and procedural due process.  Ms. Winkfield has no statutory right

26  to define death or to compel further medical intervention for her deceased daughter, thus there is

27  no basis for a mandatory injunction aimed at enabling her to achieve those very ends.

28          Plaintiff's provides no support for her contention that Health & Safety Code sections 7180

                                                10

1    and 7181 are unconstitutional.  California law regarding abortion and fetus viability does not

2    conflict with Health & Safety Code sections 7180 and 7181.  Plaintiff illogically contends there is

3    a conflict where the state determines a fetus is not viable when she has a heartbeat and no brain

4    activity, and the state's determination of death upon a showing of the irreversible cessation of

5    circulatory and respiratory functions, or irreversible cessation of all functions of the entire brain,

6    including the brain stem.  There is no apparent conflict between the law governing fetus viability

7    and the law governing determination of death, and Plaintiff does not articulate any meaningful

8    Constitutional argument demonstrating otherwise.  The fact that some courts hold that a fetal life

9    can be nurtured and grow into an independent human being does not preclude courts from

10   recognizing that a person who has suffered irreversible cessation of circulatory and respiratory

11   functions, *or* functions of the entire brain, including the brain stem, cannot be nurtured to recover

12   from death.  The state draws a line at the beginning of life and at the end of life, relying on the

13   expert determination of medical professionals.

14   **E.    Plaintiff Provides No Authority that Jahi McMath May Assert Constitutional Rights
         After Her Death that Entitle Plaintiff to the Relief She Seeks.**

15        As discussed in detail in Defendant's Opposition to Proposed Temporary Restraining

16   Order and Injunctive Relief (Dkt. 3, Section III), the Constitutional provides no Fundamental

17   Right or First Amendment right conferring upon a parent control over the determination of death

18   or removal of ventilation from a brain-dead patient.  It follows, there is no Constitutional right to

19   compel a hospital to provide further medical procedures on a dead patient.  In arguing that case

20   law "raises the question" of whether Ms. Winkfield may assert Jahi McMath's constitutional

21   rights after her death, Plaintiff relies exclusively on factually and legally distinguishable cases

22   where the patient is not dead, continues to have ongoing brain activity, and section 7180 is

23   inapplicable.

24        *In The Matter of Baby K*, 832 F.Supp. 1022 (1993 D. Va.), which had nothing to do with

25   California law, involved a living infant who had brain stem function. The court ruled in *In re*

26   *Christopher*, 106 Cal.App.4th 533 (2003), to uphold a mother's decision to terminate life support

27   of a living child who had lower and mid-brain-stem activity, who was not brain dead, over the

28

OPP. TO MOTION TO COMPEL FURTHER LIFE
SUPPORT
CASE NO. 4:13-CV-05993-SBA

1   objections of the father who caused child's injuries.  In *Severns v. Wilmington Medical Center,*

2   *Inc*. 421 A.2d 1334, 1347 (Del. Supreme Ct. 1980), the court granted the husband's request to

3   remove his comatose wife who maintained use of her brain stem from life-support following an

4   evidentiary hearing that showed evidence that his wife articulated her preference prior to her

5   injury.  Finally, in *Dority v. Superior Court*, 145 Cal. App. 3d 273, 280 (Cal. App. 4th Dist.

6   1983), the court upheld a guardian ad litem's decision to withdraw life-support for a brain dead

7   child.  While the court in *Dority* stated that a "treating hospital and physicians should allow the

8   parents to *participate* in this decision" to remove a brain dead child from life-support devices, the

9   court does not hold that parents have to authority to control the decision of when to remove a

10   ventilator or compel the treating hospital to undertake futile medical intervention.  *Ibid* [emphasis

11   added].  None of the cases cited by Plaintiff ordered a hospital to perform surgery, even though

12   each case involved a patient who was still living.  The cases offer no support for the extraordinary

13   relief sought here to perform surgery on a dead body.

14      Plaintiff cites no relevant authority that she is entitled to the extraordinary relief sought

15   based on her personal religious belief about how to define "death" that drastically conflict with

16   California's statutory definition and its attendant procedures.  A parent is not relieved of the

17   obligation to comply with mandatory state laws affecting her child simply because the laws

18   require conduct that does not comport with the parent's exercise of her religious beliefs.  *See*,

19   *Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 234 (3d Cir. 2008).  Plaintiff relies on

20   completely distinguishable cases requiring hospitals and medical centers to comport with specific

21   state law in providing medical care to its living patients.

22      In *Oliner v. Lenox Hill Hospital*, 106 Misc. 2d 107, 108 (N.Y. Sup. Ct. 1980), the court

23   held a father was entitled to have a religious circumcision performed for his "healthy" infant son

24   despite a contrary hospital policy because the religious circumcision could "easily be performed"

25   by a "mohel" who has been certified by another hospital within the jurisdiction.  The father

26   sought relief that did not contradict state law and that was available in other hospitals within the

27   same city.  The court did not address a patient's religious beliefs in *McGraw v. Hansbarger*, 171

28   W. Va. 758, 764 (W. Va. 1983), wherein the court ordered Director of the Department of Health

12

to provide detoxification and alcoholism treatment programs at community mental health centers pursuant to a state statute that specifically required such care.

Ms. Winkfield wants Children's Hospital, in defiance of state law, to conform to her religious beliefs by compelling physicians to perform surgical procedures on Jahi McMath's dead body. The First Amendment protects Ms. Winkfield's freedom to believe that her child is not dead. However, the First Amendment does not permit Ms. Winkfield to act on her beliefs by compelling Children's Hospital to disregard a facially neutral state law that serves a legitimate state objective. Nor does it allow her to practice religious beliefs in contradiction to Children's Hospital policies, expertise and the professional ethics of the physicians therein.

**F.    Plaintiff Requests Relief That Violates Medical Ethics and State Law Governing Hospitals.**

Surgery on a dead body is contrary to the ethics of the medical profession. *See*, Declaration of David Durand, filed concurrently herewith. The state has a strong interest in "maintaining the ethical integrity of the medical profession." *Superintendent of Belchertown State Sch. v. Saikewicz*, 370 N.E.2d 417, 425-426 (Mass. 1977) (holding that even where a competent, living patient elects to withdraw life-prolonging treatment, the state has an interest in maintaining the ethical integrity of the medical profession, and recognizing that "Prevailing medical ethical practice does not, without exception, demand that all efforts toward life prolongation be made in all circumstance."). It is obvious on its face that a court order requiring a hospital to perform surgery on a dead person is outlandishly unwarranted.

As tragic as it is, Ms. McMath is deceased. Nothing can be done to stop the natural progression of Ms. McMath's post-mortem bodily deterioration which is already underway—or the bodily deterioration of any deceased individual. (See Supplemental Declaration of Dr. Heidi Flori at ¶¶4-8 filed herewith and the Declaration of Dr. Heidi Flori at ¶8.) The diagnosis of death by neurological criteria results in not only the loss of higher cortical functions (emotions, voluntary movements, vision, etc.) but also on complete cessation of all brain functions, including those of the brain stem. The brain stem provides vital regulatory control for critical bodily functions such as maintenance of heart rate, temperature, and respiratory effort, as well as

OPP. TO MOTION TO COMPEL FURTHER LIFE
SUPPORT
CASE NO. 4:13-CV-05993-SBA

1   regulation of nerve impulses that adjust the tone of blood vessels and nerves throughout the body.

2   Therefore, the body of Ms. McMath, unlike the bodies of those patients with severe brain injury

3   but with retained brain stem reflexes (including Terry Schiavo and Ariel Sharon), simply cannot

4   regulate these life-sustaining functions over time.   (See Supplemental Declaration of Flori at ¶6.)

5          The medical procedures requested by the Plaintiff were also considered by the Children's

6   Ethics Committee on January 2, 2014. After considering all of the issues, the Ethics Committee

7   unanimously concluded that it is inappropriate to subject a deceased person's body to medically

8   and ethically inappropriate interventions, and that the hospital and Ms. McMath's health care

9   providers should not be compelled to do so. (See the Declaration of Dr. Ann Petru at ¶¶4-7 filed

10  herewith.)  The Ethics Committee affirmed that no conceivable goal of medicine -- preserving

11  life, curing disease, restoring function, alleviating suffering -- can be achieved by continuing to

12  ventilate and artificially support a deceased patient.  There are, therefore, not only no medical

13  indications for proceeding with placement of a tracheostomy or gastrostomy tube, but it would

14  also be a violation of commonly accepted medical and ethical standards to proceed with doing so.

15  It was the consensus of the Committee it is a violation of a newly dead person's dignity to

16  continue to provide any interventions beyond those required to accommodate the family's right to

17  a reasonably brief period of time to gather at the bedside to say goodbye and/or perform any

18  rituals before the body is prepared for burial, cremation, or organ donation. (See Petru

19  Declaration at ¶8).

20         Moreover, an order purporting to compel Children's to perform such surgery would be

21  unlawful under state law.  California law prohibits hospitals such as Children's from practicing

22  medicine.  *See*, Business & Professions Code section 2400, *et seq*.  California law maintains what

23  is known as the prohibition on the "corporate practice of medicine" which fundamentally acts to

24  ban non-physician or physician-owned entities (i.e., entities that are not medical groups and

25  physician professional corporations) from providing "hands on" physician services.  Business &

26  Professions code Section 2401 sets forth certain exceptions from the prohibition, including county

27  hospitals, certain community clinics, and academic medical centers.  However, non-profit hospital

28  corporations are not excluded from the prohibition on the "corporate practice of medicine."

OPP. TO MOTION TO COMPEL FURTHER LIFE
SUPPORT
CASE NO. 4:13-CV-05993-SBA

1    Children's Hospital, as with other California non-profit hospital corporations, therefore contracts

2    with individual physicians and physician groups as independent contractors to staff its services.

3    Thus, Children's does not employ surgeons or other physicians to practice medicine.  *See* Durand

4    Declaration, *supra*.  Nor can Children's compel physicians with privileges to undertake surgery.

5    *Ibid*.  The physicians on the Medical Staff at Children's Hospital provide medical care to patients

6    based on their own professional judgment and assessment of patient needs.  Therefore, pursuant

7    to Business & Professions Code section 2400, *et seq*., Children's Hospital cannot "order" any

8    physician to perform any treatment or procedure on a patient of the Hospital.

9          For the foregoing reasons, Plaintiff will not be able to meet her substantial burden for a

10   mandatory injunction and her motion should be denied.

11                              **III.  CONCLUSION**

12          There is no need for surgery upon the body of Jahi McMath, deceased.  There is no legal

13   basis for requiring such surgery.  And there is no person before this Court who could be ordered

14   to perform this surgery.  Ms. Winkfield's request for an order compelling surgery upon the body

15   of her deceased daughter should be denied once more.

16

17   Dated: January 3, 2014                          ARCHER NORRIS

18

19                                                    */s/ Douglas C. Straus*

20                                                    Douglas C. Straus
                                                      Attorneys for Defendant
21                                                    CHILDREN'S HOSPITAL & RESEARCH
                                                      CENTER AT OAKLAND
22

23   C0413001/1726880-1

24

25

26

27

28

OPP. TO MOTION TO COMPEL FURTHER LIFE
SUPPORT
CASE NO. 4:13-CV-05993-SBA